UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **HAN PEIYONG,**<br><br>              **PETITIONER,**<br><br>     **v.**<br><br>**U.S. SECURITIES AND EXCHANGE COMMISSION,**<br><br>              **RESPONDENT.** | **Case No. 1:25-mc-000350** |

**Verified Opposition of the U.S. Securities and Exchange Commission to Petitioner's Motion to Quash Subpoena under the Right to Financial Privacy Act of 1978**

## TABLE OF CONTENTS

BACKGROUND ........................................................................................................................... 2

ARGUMENT ................................................................................................................................. 6

    A.   The RFPA provides the sole means for a customer to challenge an administrative subpoena. ................................................................................................ 6

    B.   The SEC is conducting a legitimate law enforcement investigation. ................. 7

    C.   The subpoenaed documents are relevant to the SEC's investigation. ................ 8

CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

**CASES**

*CFTC v. Catalano,* No. 81 C 4315 et al,

   1981 U.S. Dist. LEXIS 15728 (N.D. Ill. Nov. 3, 1981)..........................................9

*Dawar v. HUD*, 820 F. Supp. 545 (D. Kan. 1993).......................................................8

*Feiner v. SEC*, 914 F. Supp. 2d 474 (S.D.N.Y. 2012) ............................................10

*Hamilton v. SEC*, No. 2:21-MC-01022,

   2021 WL 6102420 (C.D. Cal., Sept. 7, 2021) .......................................................8

*Harrison v. SEC*, No. 1:12-CV-2379-ODE-SSC,

   2012 WL 13130044 (N.D. Ga. Aug. 3, 2012).......................................................11

*In re U.S. SEC Private Investigation, etc.,* Misc. No. M8-85 (MBM),

   1990 U.S. Dist. LEXIS 10460 (S.D.N.Y. Aug. 10, 1990) ................................9, 10

*Kaplan v. SEC*, No. 22-MC-3687,

   2023 WL 1766274 (E.D.N.Y. Feb. 3, 2023) ....................................................7, 9

*Karlis v. SEC*, 613 F. Supp. 2d 150 (D. Mass. 2009)................................. 7, 8, 9, 11

*Neuhaus v. SEC*, No. MISC 07-0025 FCD GGH,

   2007 WL 1322340 (E.D. Cal. May 4, 2007) .......................................................11

*Pennington v. Donovan,* 574 F. Supp. 708 (S.D. Tex. 1983)..................................7

*Persaud v. SEC*, No. 24-MC-0505 (JHR) (RWL),

   2025 U.S. Dist. LEXIS 50486 (S.D.N.Y. March 17, 2025)................................12

*Porrazzo v. SEC*, No. MC 18-00106 LEK-KSC,

   2018 WL 1598655 (D. Haw. Apr. 2, 2018)..........................................................................11

*Rodriguez v. FSLIC*, 712 F. Supp. 159 (N.D. Cal. 1989)...................................................7, 10

*Sandsend Financial Consultants, Ltd. v. FHLBB*,

   878 F.2d 875 (5th Cir. 1989) ............................................................................................7

*SEC v. Arthur Young & Co.*,

   584 F.2d 1018 (D.C. Cir. 1978), *cert. denied*, 439 U.S. 1071 (1979)...................8

*SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735 (1984) ..................................................6

*United States v. Wilson*, 571 F. Supp. 1417 (S.D.N.Y. 1983).................................9

**STATUTES & RULES**

12 U.S.C. § 3401 et seq................................................................................................1

12 U.S.C. § 3410........................................................................................................1

12 U.S.C. § 3410(b)...................................................................................................1

12 U.S.C. § 3410(c) ...................................................................................................7

12 U.S.C. § 3410(e) ...................................................................................................6

15 U.S.C. § 77q(a).....................................................................................................2

15 U.S.C. § 78j(b)......................................................................................................2

15 U.S.C. § 78u(a).....................................................................................................7

15 U.S.C. § 78u(b).....................................................................................................1

Respondent U.S. Securities and Exchange Commission ("SEC") respectfully opposes the motion (ECF No. 2) that Petitioner Han Peiyong ("Petitioner") filed on or about August 25, 2025. Petitioner's motion seeks to quash an investigative subpoena dated July 16, 2025 (the "Subpoena") that the SEC served on East West Bank ("EWB").[1]

Petitioner relies on the customer challenge provisions of the Right to Financial Privacy Act of 1978 ("RFPA"), 12 U.S.C. § 3401 *et seq.*, and has submitted a sworn statement claiming "that none of [his] financial records contain any information that would be material or relevant to the SEC's investigation into 'Market Manipulation in Certain IPOs' " (ECF No. 3 at ¶6).[2]

The Court should deny Petitioner's motion because staff of the SEC's Division of Enforcement ("SEC Staff") is conducting a legitimate law enforcement inquiry and has evidence suggesting that Petitioner is connected to a group of individuals and entities involved in manipulating the securities of numerous issuers

---

[1] Pursuant to 12 U.S.C. § 3410(b), Jason Anthony, an attorney with the SEC's Division of Enforcement, has verified the facts in this Opposition. The SEC has designated Mr. Anthony—and others—to issue subpoenas and conduct this investigation. *See* 15 U.S.C. § 78u(b).

[2] The RFPA prescribes the procedures for processing objections to administrative subpoenas for bank records. *See* 12 U.S.C. § 3410. The statute contemplates that a court will initially review an objection to determine whether the movant has complied with the prima facie requirements of 12 U.S.C. § 3410(a). If the court finds the movant has met those requirements, it orders the Government to file a response. *See* 12 U.S.C. § 3410(b). The RFPA provides that the court will decide the motion within seven days after receiving the Government's response. *Id.* Although the court has not yet ordered the SEC's response, the SEC files this opposition to avoid delay.

1

that registered initial public offering ("IPO") shares with the SEC and that traded on U.S. markets (*e.g.,* NASDAQ and the New York Stock Exchange).

## BACKGROUND

On Janaury 13, 2023, the SEC issued a Formal Order Directing Private Investigation and Designating Officers to Take Testimony in *In the Matter of Market Manipulation in Certain IPOs* (HO-14588) ("Formal Order"). The Formal Order states that the SEC has information that tends to show that "U.S. Broker Dealers[,]" "Issuers[,]" "Hong Kong Broker-Dealers[,]" and "other persons and entities" may have been or may be engaging in violations of the following federal securities laws:

- Sections 17(a) & 17(b) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], and

- Sections 9(a)(1), 9(a)(2), 10(b), 13(d), 15(c), and 16(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rules 10b-5 and 16a-3 thereunder.

The Formal Order further states:

> [S]uch persons or entities, directly or indirectly, may have been or may be, among other things, making false statements of material fact and omitting to disclose material facts. . . concerning, among other things, the existence or terms of agreements or arrangements between or among the issuer, underwriter, and/or broker-dealers concerning the distribution or pricing of newly issued shares; the concentration of ownership in the Issuers' securities after a securities offering; the role played by Hong-Kong Broker-Dealers in the allocation and

2

>   distribution of newly issued shares; and plans, communications, or actions intended to control and/or manipulate the price of the Issuers' securities or trading of the Issuers' securities.

Formal Order at 6.

The Formal Order concludes by directing that "a private investigation be made to determine whether any persons or entities have engaged in, or are about to engage in, any of the reported acts or practices or any acts or practices of similar purport or object[.]" *Id.*

SEC Staff is investigating whether dozens of IPOs registered with the SEC and trading on U.S. exchanges between 2020 and 2025 (the "Relevant Offerings") were used as vehicles in a suspected IPO manipulation scheme ("Suspected IPO Manipulation Scheme") orchestrated by persons and entities with ties to Hong Kong and China (the "Syndicate"). In the days, weeks, and/or months following its IPO, each issuer's securities experienced unusual, extreme, and unexplained price movements, generally consisting of a large upward price spike followed by a drop to a price far below the high and often below the offering price. Today, these issuers' securities typically trade at a fraction of the offering price.

SEC Staff's investigation indicates that the unusual price movements following the Relevant Offerings may have resulted from illegal market manipulation that the Syndicate orchestrated. Specifically, SEC Staff has information that tends to show that:

- individuals and entities affiliated with the Syndicate acquired most of the issuers' public float by purchasing shares in many Relevant Offerings;

- shortly after the Relevant Offerings, anonymous third parties on the Internet convinced investors to purchase the issuers' securities at prices substantially higher than they were offered; and

- the accounts under the Syndicate's control that participated in the Relevant Offerings sold the issuers' shares at a significant profit into the bubble the solicitations created.

SEC Staff has received evidence that suggests Petitioner has significant financial and personal ties to Syndicate participants profiting from this scheme. First, SEC Staff has evidence suggesting that Petitioner's brother is a member of the Syndicate and an instrumental participant in the scheme. Specifically, evidence from the investigation suggests that Petitioner's brother was involved in the Syndicate's scheme by, among other things, (a) opening bank and brokerage accounts for persons and entities under the Syndicate's control that invested in the Relevant Offerings; and (b) personally investing in certain Relevant Offerings, including through one or more entities he owned. And that evidence suggests Petitioner's brother sent Petitioner significant amounts of money that appear linked to profits from the Suspected IPO Manipulation Scheme.

First, Petitioner's brother deposited large sums of money possibly linked to the scheme into one brokerage account and then sent at least $4.5 million from that brokerage account as "gifts" to accounts under Petitioner's control. Specifically, on January 15, 2021, Petitioner's brother sent $1.5 million to one of Petitioner's personal bank accounts at EWB. Then, on January 27, 2022, Petitioner's brother sent an additional $3 million to Joyous Hill Holdings ("Joyous Hill"), an entity Petitioner owned.

Second, Petitioner appears to have also received significant proceeds from the Suspected IPO Manipulation Scheme from other suspected Syndicate members through Joyous Hill and Jin Zhi Wang Trade Limited ("JZWT Ltd."), an entity in which Petitioner purchased a 40% ownership interest in or around June 2021. From March 2022 through February 2023, Joyous Hill received additional payments of approximately $7 million from suspected Syndicate members that purchased IPO shares in one or more of the Relevant Issuers' IPOs.

Joyous Hill later disbursed a significant portion of these funds to other accounts related to Petitioner. For example, Joyous Hill sent $954,000 to one of Petitioner's personal bank accounts at China Mingsheng Banking Corp. Ltd. in June 2022. Joyous Hill also sent JZWT Ltd. more than $5 million from April 2022 through November 2022. In addition, between May 2022 and December 2022,

JZWT Ltd. received an additional $7.95 million in payments from other Syndicate related entities that invested in the Relevant Offerings.

In deciding to issue a subpoena to EWB for information about the Petitioner's accounts, SEC Staff considered the above facts that tend to show millions in proceeds from the Suspected IPO Manipulation Scheme flowed through accounts in which Petitioner has an interest. SEC Staff issued the subpoena to help trace the proceeds of the Syndicate's Suspected IPO Manipulation Scheme and, *inter alia,* to obtain information about (1) the ultimate disposition of the funds sent into accounts under Petitioner's apparent control (including, but not limited to, the amount deposited into Petitioner's EWB accounts); and (2) whether other payments connected to the Suspected IPO Manipulation Scheme were made to (or made from) Petitioner's EWB accounts.

## ARGUMENT

**A. The RFPA provides the sole means for a customer to challenge an administrative subpoena.**

The RFPA provides the sole means for a customer to challenge a federal agency's administrative subpoena for bank records. *See* 12 U.S.C. § 3410(e); *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745-46 (1984). A court must deny a customer's RFPA challenge to a subpoena if the government agency can show the relevance of the subpoenaed documents to a legitimate law enforcement inquiry. "Upon finding that there is a demonstrable reason to believe that the agency is

conducting a legitimate law enforcement inquiry and that the records sought are relevant to that inquiry, the court 'shall deny the motion to quash.'" *Sandsend Financial Consultants, Ltd. v. FHLBB,* 878 F.2d 875, 877 (5th Cir. 1989) (quoting 12 U.S.C. § 3410(c)); *see also Karlis v. SEC*, 613 F. Supp. 2d 150, 152-53 (D. Mass. 2009) (the "Court must deny the motion if [']there is demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry.[']" (quoting 12 U.S.C. § 3410(c)); *Kaplan v. SEC*, No. 22-MC-3687, 2023 WL 1766274, at *3 (E.D.N.Y. Feb. 3, 2023) (explaining that the SEC does not carry a "great [burden]" to support an RFPA subpoena).

### B. The SEC is conducting a legitimate law enforcement investigation.

Federal securities laws authorize the SEC to investigate possible violations of the federal securities laws and subpoena documents. *See* 15 U.S.C. § 78u(a). Because the SEC has issued a Formal Order relating to its investigation of the market manipulation of numerous offerings in the United States, a "demonstrable reason [exists] to believe that the law enforcement inquiry is legitimate." *Rodriguez v. FSLIC*, 712 F. Supp. 159, 162 (N.D. Cal. 1989); *see also Pennington v. Donovan,* 574 F. Supp. 708, 709 (S.D. Tex. 1983) ("An investigation is legitimate if it is one the agency is authorized to make and is not being conducted solely for an improper purpose such as political harassment or intimidation or

7

otherwise in bad faith."); *Karlis,* 613 F. Supp. 2d at 153 (finding a law enforcement inquiry was legitimate where the SEC "acted under a formal order entered pursuant to its statutory authority"); *Dawar v. HUD*, 820 F. Supp. 545, 547 n.2 (D. Kan. 1993) (finding that an Inspector General investigation was clearly legitimate where the Inspector General has statutory authority to subpoena documents relevant to investigations). "Congress has endowed the Commission . . . with broad power to conduct investigations—'such . . . as it deems necessary to' ferret out violations of the federal securities laws and implement regulations, whether consummated or incipient—and [to seek] production of relevant materials by those who seem to have them." *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1023 (D.C. Cir. 1978) (footnotes omitted), *cert. denied*, 439 U.S. 1071 (1979).

The SEC's investigation of Petitioner is legitimate since it is pursuant to a Formal Order and concerns possible violations of the federal securities laws. Petitioner offers no argument to the contrary.

### C. The subpoenaed documents are relevant to the SEC's investigation.

Courts broadly construe the term "relevant" in considering an RFPA challenge to an agency's investigative subpoena. "Subpoenaed information is relevant if it 'touches a matter under investigation,' [and] financial information [need not be] relevant in a narrow, evidentiary sense . . . ." *Hamilton v. SEC*, No. 2:21-MC-01022, 2021 WL 6102420, at *3 (C.D. Cal., Sept. 7, 2021) (citations

8

omitted); *see also CFTC v. Catalano,* No. 81 C 4315 et al, 1981 U.S. Dist. LEXIS 15728, at *2 (N.D. Ill. Nov. 3, 1981) (finding bank records relevant to an inquiry where they "'might throw light' on matters germane to the Commission's inquiry"); *Karlis,* 613 F. Supp. 2d at 153 ("the SEC must show only that there is a reasonable belief that the records are relevant"); *In re U.S. SEC Private Investigation, etc.,* Misc. No. M8-85 (MBM), 1990 U.S. Dist. LEXIS 10460, at *2 (S.D.N.Y. Aug. 10, 1990) ("the statute does not require the agency to show that the records are relevant but rather that agency staff have a 'reasonable belief that the records sought are relevant'"); *United States v. Wilson*, 571 F. Supp. 1417, 142 (S.D.N.Y. 1983) ("the RFPA requires only that financial information be relevant to a 'legitimate law enforcement inquiry,' and not relevant in a narrow, evidentiary sense"); *Kaplan*, 2023 WL 1766274, at *4 ("the SEC correctly argues that the RFPA makes no prohibition on seeking personal financial information").

    The SEC is entitled to the records that it has subpoenaed because SEC Staff has a "reasonable belief that the records are relevant" to its investigation of the manipulation of the Relevant Offerings. As described above, SEC Staff issued the Subpoena to obtain information about the disposition of funds that may be connected the Suspected IPO Manipulation Scheme and to identify other transactions (and parties/Syndicate members) that may be connected to the Suspected IPO Manipulation Scheme. Obtaining the subpoenaed information is

9

key to tracing money related to potential violations of the federal securities laws. Obtaining bank records to "follow the money" is a proper—and often necessary—investigative technique. *See, e.g., Feiner v. SEC*, 914 F. Supp. 2d 474, 478 (S.D.N.Y. 2012) ("Once a person's connection to apparently illicit conduct has been shown, it is relevant to know whether that person's bank account contains evidence of such conduct. . . . The SEC's task is to follow the money."); *In re U.S. SEC Private Investigation.*, 1990 U.S. Dist. LEXIS 10460, at *2 ("By showing that [the customer] has a connection to activity [the SEC] is charged to investigate, the SEC has shown reason for a belief that the bank records it [is seeking contain] relevant information."); *Rodriguez*, 712 F. Supp. at 162 (N.D. Cal. 1989) (bank records tracing proceeds deposited to an individual's bank account are relevant to investigation).

Petitioner moves to quash the Subpoena for records of EWB bank accounts by claiming "that none of [his] financial records contain any information that would be material or relevant to the SEC's investigation." *See* ECF No. 3 at ¶6. And he claims that he "never invested in any initial public offerings (IPOs), and therefore, [his] records at East West Bank—or at any other financial institution—contain no information relating to IPO investments." *See* ECF No. 3 at ¶7.

Those claims do not support quashing the SEC's subpoena because the SEC has provided a sufficient basis for its belief that the subpoenaed information is

10

relevant to its investigation. The law does not require the SEC or the Court to accept an individual's assertions that he or she has not engaged in the conduct at issue. *See Karlis*, 613F. Supp. 2d at 153 (finding bank records relevant even though movant claimed she had not been involved in her husband's dealings with the companies at issue); *Porrazzo v. SEC*, No. MC 18-00106 LEK-KSC, 2018 WL 1598655, at *5 (D. Haw. Apr. 2, 2018) ("SEC is not required to accept Movants' statements without the opportunity to confirm them through examination of the records referenced in the Contested Subpoenas."); *Harrison v. SEC*, No. 1:12-CV-2379-ODE-SSC, 2012 WL 13130044, at *10 (N.D. Ga. Aug. 3, 2012) ("SEC is not required to accept Movants' explanations in lieu of its own investigation into how and why those transactions occurred"); *Neuhaus v. SEC*, No. MISC 07-0025 FCD GGH, 2007 WL 1322340, at *4 (E.D. Cal. May 4, 2007) (SEC not obligated to rely on movants' statements that certain accounts held at the bank are not tied to scheme being investigated and is instead allowed to "perform inquiry to corroborate these statements").

Petitioner also claims that "[t]he SEC has neither met nor attempted to meet its burden to show that [Petitioner]'s records are relevant to a legitimate law enforcement inquiry" (ECF No. 3 at 8-11 and ECF No. 2). The SEC, however, had no obligation to make such a showing before Petitioner filed his motion, and the SEC has now established that the records are relevant to a legitimate law

11

enforcement inquiry. "By showing that plaintiff has a connection to activity it is charged to investigate, the SEC has shown reason for a belief that the bank records it seeks here contain relevant information." *Persaud v. SEC*, No. 24-MC-0505 (JHR) (RWL), 2025 U.S. Dist. LEXIS 50486, at *14 (S.D.N.Y. March 17, 2025).

## CONCLUSION

The court should deny Petitioner's challenge to the SEC's Subpoena and order the forthwith production of the subpoenaed documents.

Respectfully Submitted,

U.S. Securities and Exchange Commission

*James M. McHale*
_____
Melinda Hardy, Assistant General Counsel
(D.C. Bar No. 431906)
James M. McHale, Senior Counsel
(N.Y. Bar No. 1578350/ D.C. Bar No. 111773)
Office of the General Counsel
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-9613
Phone: (202) 551-5046 (McHale)
Email: mchalejm@sec.gov
Dated: September 17, 2025

## VERIFICATION OF OPPOSITION

My name is Jason Anthony. The SEC employs me as an attorney in its Division of Enforcement (ENF), Home Office, Washington D.C. As an ENF Staff Attorney, my duties include conducting investigations of possible violations of federal securities laws. Among the matters assigned to me is *In the Matter of Market Manipulation in Certain IPOs (SEC File No. HO-14588)* for which the SEC issued the subpoena in this proceeding.

I have read the foregoing SEC's Opposition to Peiyong Han's motion. To the extent that this Opposition contains statements of fact, under penalties of perjury as set out in 28 U.S.C. § 1746, I affirm that these statements are true and accurate except where statements are based on information and belief. Where any statement is based on information and belief, I affirm that they are true and accurate based on my information and belief.

_/s/ Jason Anthony_
Jason Anthony
Signed at Washington DC
Dated: September 17, 2025

## Attorney's Word Count Certificate

I hereby certify that I have used Word's "Review" function to calculate the "word count" for this pleading at (3457).

*James M. McHale*
_____

September 17, 2025                                        James M. McHale

## CERTIFICATE OF SERVICE

I certify that on this 17th day of September 2025, I filed the foregoing Opposition to Han Peiyong's Motion to Quash the SEC's Subpoenas, dated September 17, 2025, with the Clerk of the Court using the CM/ECF system, which will send a notification of this filing to attorneys of record and registered participants,

and I sent a copy of this pleading by email to Petitioner's counsel of record, Christopher Warren, Esq. at:

cwarren@sh-law.com

*James M. McHale*
_____
James M. McHale
Dated: September 17, 2025